UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DENISE TUCKER, *Administratrix of the*
*Estate of James L. Long, Deceased*,                         :

                                   :       Hon. Joseph H. Rodriguez

              Plaintiff,         :       Civil Action No. 19-12946
     v.

                                     :

CITY OF PHILADELPHIA, BURLINGTON
COUNTY BOARD OF CHOSEN          :
FREEHOLDERS, GURBIR S. GREWAL,      OPINION
JOHN DOES 1-6,                :

            Defendants.      :


    Presently before the Court are three separate motions seeking summary

judgment by defendants City of Philadelphia (the "City"), Burlington County Board of

Chosen Freeholders (the "County"), Gurbir S. Grewal[1], and John Does 1-6.[2]  The Court

has considered the written submissions of the parties as well as the arguments advanced

at the hearing on May 10, 2023. The record of that hearing is incorporated herein.  For

---

[1] Gurbir S. Grewal is the Attorney General of the State of New Jersey.  The Amended Complaint identifies this Defendant as "Gurbir S. Grewal, Attorney General's Office, State of New Jersey," is an agency/ department organized within State of New Jersey and maintains an office at the above-captioned address."

[2] The use of John Doe defendants is permissible "until reasonable discovery permits the true defendants to be identified." *Blakeslee v. Clinton Cty.,* 336 Fed. App'x 248, 250 (3d Cir. 2009) (emphasis added) (affirming dismissal of John Doe defendants where plaintiff failed to amend her complaint to identify true defendants after ten months of discovery).  "If reasonable discovery does not unveil the proper identities, however, the John Doe defendants must be dismissed." *Id.; Adams v. City of Camden*, 461 F. Supp. 2d 263, 271 (D.N.J. 2006) (eliminating fictitious defendants from the action under Rule 21 because after "a year of discovery and motion practice, Plaintiff has failed to identify these defendants or provide any evidence of their liability for the claims raised in the Complaint.").  Here, discovery was commenced nearly three years ago and Plaintiff still has not identified the fictitious defendants or provided evidence as to how Defendants John Does 1-6 were involved in this matter. Therefore, pursuant to Rule 21, Defendants John Does 1-6 are dismissed with prejudice.

the reasons stated on the record as well as those set forth below, summary judgment will be granted as to each defendant.

## I.      Background

The underlying facts of this case are remarkable and largely undisputed.  Plaintiff Denise Tucker stands in the shoes of James L. Long, as the administratrix of his estate. Long's death is unrelated to the facts of this case. In simple terms, Plaintiff alleges negligence and violations of Long's civil rights which occurred when Long was detained pursuant to a bench warrant.  The bench warrant was issued when Long failed to appear for a criminal prosecution hearing in the Burlington County Superior Court.  Plaintiff challenges the validity of the warrant on the basis that he was never served with an order to appear.  Leaving that issue aside, what happens next is a failure of the administration of justice.

On June 10, 2016, the State of New Jersey, Burlington County, issued a warrant for Long's arrest for alleged drug related violations of New Jersey State Law. That same day, Long was arrested at his home in Philadelphia by the Philadelphia Police Department.  Long was extradited to Burlington County New Jersey, processed, and then released without a set date for his arraignment.   Shortly thereafter, Burlington County issued a Notice to Appear for his arraignment, scheduled for July 18, 2016.  The envelope of the notice was machine stamped July 9, but the post mark stamp indicated July 11.  The envelope was returned to Burlington County on July 17, 2016 with a stamp indicating "Return to Sender. Attempted-Not Know. Unable to Forward." Pl. Counterstatement of Facts, ¶ c [Dkt. No. 88].

Long, who claims he never received notice, did not appear for the July 18, 2016, hearing and a bench warrant was issued by a Superior Court judge.  Long eventually was arraigned and the matter was set for trial.  The trial resulted in an acquittal in September 2016.  The bench warrant was never rescinded.

Fast forward two years to November 2018— Long is the victim of a robbery in Philadelphia and called the police to make a report.  During the interview, the Philadelphia Police enter Long's name in the National Crime Information Center ("NCIC") System and discover the Burlington County Superior Court bench warrant. The responding Philadelphia Police Officer called the Burlington County Sheriff and confirmed that the warrant was active.  As a result, Long is taken into custody and remains there for twenty-three days. During this time, Long claims he told multiple people multiple times that he answered to the warrant and was successful at trial. Getting nowhere with his protestations, Long waived his challenge to extradition and was picked up by the Burlington County Sheriff.

Once in front of a different New Jersey Superior Court Judge in Burlington County, Long again protested his current incarceration and explained the series of events resulting in his acquittal.  The judge, in the middle of the hearing, left the bench and consulted relevant court records which confirmed Long's story.  Long was immediately released.

There is one other wrinkle to Long's plight.  Almost one year after his acquittal, Long applied for and was granted an Order of Expungement as it related to those

charges. Pl. Ex. C. Plaintiff argues that the issuance of the expungement order should have addressed the bench warrant.[3]  N.J.S.A. §2C:52-1 provides:

> Definition of Expungement.
>
> a. Except as otherwise provided in this chapter, expungement shall mean the extraction, sealing, impounding, or isolation of all records on file within any court, detention or correctional facility, law enforcement or criminal justice agency concerning a person's detection, apprehension, arrest, detention, trial or disposition of an offense within the criminal justice system.
>
> b. Expunged records shall include complaints, warrants, arrests, commitments, processing records, fingerprints, photographs, index cards, "rap sheets" and judicial docket records.

N.J.S.A.§ 2C:52-1.

The amended complaint pleads four counts against all defendants.  The counts are styled as follows: Count I- Search and Seizure; Count II- 5th and 14th Amendments Due Process; Count III- "State law claims"- intentional tort; and Count IV- NJ Civil Rights and Constitutional Violations.

Plaintiff offers no opposition to the City's motion as to Counts III and IV; summary judgment will be granted as to those Counts.  As for the remaining counts against the City, Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 for violations of the Fourth, Fifth, and Fourteenth Amendments of the United States Constitution pursuant to *Monell v. Dep't of Social Servs. New York City*, 436 U.S. 658 (1978).  Specifically, Plaintiff alleges that the City of Philadelphia engaged in a pattern and practice and/or had a policy or custom of ignoring incarnated persons' complaints about wrongful arrests. Plaintiff's claims against the County and Grewal, include due process and

---

[3] In theory, Plaintiff is correct.  However, as will be explained *supra*, execution of the expungement order in 2017 required Long, or his representative, to forward proof of the expungement to the Sheriff.  In other words, the expungement order was not self-actualizing. DeNise Dep., P. Statement of Facts, Ex. K, p. 35.

*Monell* violations pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2(c), and general negligence claims.

## II.    Standard of Review

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (a). Thus, the Court will enter summary judgment in favor of a movant who shows that it is entitled to judgment as a matter of law and supports the showing that there is no genuine dispute as to any material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56 (c)(1)(A).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts

showing that there is a genuine issue for trial. *Id.*; *Maidenbaum v. Bally's Park Place, Inc.*, 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Andersen*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. That is, the movant can support the assertion that a fact cannot be genuinely disputed by showing that "an adverse party cannot produce admissible evidence to support the [alleged dispute of] fact." Fed. R. Civ. P. 56(c)(1)(B); accord Fed. R. Civ. P. 56(c)(2).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.    Discussion

Plaintiff has elected to name only the state, county and municipal entities in her complaint. The genesis of the events preceding Long's erroneous detention span several years and involve various disparate actors, none of whom are parties to this lawsuit.

A. Claims pursuant to 42 U.S.C. § 1983 and the NJCRA

Plaintiff's Constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives another of rights protected by the United States Constitution. *See Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*See* 42 U.S.C. § 1983.

As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. *See Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Baker*, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." *Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir.

1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that plaintiff was deprived of his rights by a person acting under the color of state law. *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 464 (3d Cir. 1989).

More specifically, "[w]hen a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation, or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. 658). *Monell* created a "two-path track" to municipal liability, that hinged on whether the claim is premised on a municipal policy or custom. *Id.*

In *Andrews v. City of Philadelphia*, the Third Circuit expanded on these two sources of liability: A government policy or custom can be established in two ways. Policy is made when a 'decisionmaker possess[ing] final authority to establish a municipal policy with respect to the action' issues an official proclamation, policy, or edict. A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanently and well-settled' as to virtually constitute law. 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Beck*, 89 F.3d at 971) (citations omitted). Custom requires proof of knowledge and acquiescence by the decisionmaker. *Watson v. Abington Twp.*, 478 F.3d 144, 154 (3d Cir. 2007); *Beck*, 89 F.3d at 971.

Additionally, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 405 (1997). For determining whether a municipality should be held liable under § 1983, "deliberate indifference" is the relevant standard. *Id*. at 410-11. "Deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor consciously disregarded a known or obvious consequence of his or her action. *Id*. Moreover, a plaintiff must demonstrate that a municipal decision reflected deliberate indifference to the risk that a violation of a particular constitutional right would follow the decisions.  *Id*. "[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to a municipality. The Plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id*. at 404.

Plaintiff also files suit under the NJCRA.  The analysis of claims under the NJCRA is identical to its federal counterpart: Section 1983. *See generally, Newport v. Fact Concerts*, 453 U.S. 247, 259–261, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); *Allen v. Fauver*, 167 N.J. 69, 74 768 A.2d 1055 (2001). In fact, the "NJCRA was intended to serve as an analog to [Section 1983]; it was intended to 'incorporate and integrate seamlessly' with existing civil rights jurisprudence." *State v. Crawley,* 187 N.J. 440, 901

A.2d 924, 931 (2006) (citing *Aponte–Correa v. Allstate Ins. Co.*, 162 N.J. 318, 744 A.2d 175, 177–78 (2000)).

1. **City of Philadelphia**

As plead, the claims against the City in Counts I and II fail because Plaintiff has not demonstrated a custom or policy that caused a violation of Long's Constitutional rights.  The warrant was facially valid and Long's arrest and detention by the City did cause a violation of his civil rights. As a result, summary judgment will be granted as to the City.

Plaintiff's Amended Complaint described claims for false arrest, false imprisonment and municipal liability for permitting a policy and or custom that resulted in Long's detention.  Claims under § 1983 for false arrest and false imprisonment are grounded in the Fourth Amendment protection against unreasonable seizures. *Groman v. Twp. of Manalapan*, 47 F.3d 628, 636 (3d Cir. 1995); *Garcia v. County of Bucks*, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001). To survive dismissal on a false arrest claim, a plaintiff must allege facts showing that he was arrested without probable cause. *Mikhaeil v. Santos*, 646 Fed. App'x. 158, 162 (3d Cir. 2016); *Groman*, 47 F.3d at 634; *Dowling v. City of Phila.*, 855 F.2d 136, 141 (3d Cir. 1988) ("The proper inquiry in a § 1983 claim based on false arrest … is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe [as such]."). "The probable-cause standard is incapable of precise definition or quantification." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). What is clear is that reasonableness is "the touchstone[.]" *Hill v. California*, 401 U.S. 797, 804 (1971).  Thus, probable cause for an arrest exists "whenever reasonably trustworthy information or

circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002).

Here, there is no dispute that the Philadelphia Police Officer who responded to Long's robbery report called the Burlington County Sheriff to confirm that the warrant for Long was still active.  Assured that it was, the officer took Long into custody. Plaintiff claims that the officer should have done more to investigate the warrant's validity.  But the law does not place that burden on the officer. To start, a facially valid warrant generally establishes probable cause for an arrest. *See, e.g., Baker*, 443 U.S. at 144; *Illinois v. Krull*, 480 U.S. 340, 367 (1987); *Graham v. Connor*, 490 U.S. 386, 289 (1989); *McCabe v. City of Phila.*, 76 Fed. App'x. 464, 466 (3d Cir. 2003) (Alito, J.) (affirming an arrest made pursuant to facially valid warrant is typically constitutional); *Young v. City of Hackensack*, 178 Fed. App'x. 169, 171-72 (3d Cir. 2006) (affirming summary judgment in favor of defendants where warrant "appear[ed] on its face to be valid"); *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (holding that, for an arrest to be justified, "[p]robable cause need only exist as to any offense that could be charged under the circumstances"); *Kis v. Cty. of Schuylkill*, 866 F. Supp. 1462, 1469 (E.D. Pa. 1994) ("It is well-settled that probable cause to arrest generally exists when a police officer makes an arrest pursuant to a warrant which meets the requirements of the Fourth Amendment."); *Lawson v. Pennsylvania SPCA*, 124 F. Supp. 3d 394, 405 (E.D. Pa. 2015) (collecting cases).

But "an arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir.

11

2000) (citing *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997)); *Rothermel v. Dauphin Cty., Pennsylvania*, No. 16-1669, 2020 WL 1467267, at *5 (M.D. Pa. Mar. 26, 2020) ("[A]n erroneously issued warrant—that is, one that is facially valid but genuinely invalid—does not supply probable cause for arrest."), aff'd, 861 Fed. App'x. 498 (3d Cir. 2021); *Berg v. County of Allegheny*, 219 F.3d 261, 271 (3d Cir. 2000) (same). "[A] plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff [alleges]: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.' " *Wilson*, 212 F.3d at 786-87 (citation omitted) (emphasis added).

"The simple fact of nonappearance provided the government with probable cause to apply for a bench warrant.... The authority of a court to issue bench warrants to arrest [persons] who fail to appear is, in fact, unquestioned." *In re Grand Jury Proceedings Harrisburg Grand Jury 79-1*, 658 F.2d 211, 214 (3d Cir. 1981). Because Long was named in a bench warrant, probable cause for his arrest exists, and his Fourth Amendment argument fails even if the bench warrant later turns out to be invalid. *U.S. v. Smith*, 468 F.2d 381 (3d Cir. 1972); *U.S. v. Spencer*, 684 F.2d 220, 223 (2d Cir. 1982) (maintaining that a bench warrant is the equivalent to a judicial determination of probable cause); *Carter v. Baltimore County*, 95 Fed. App'x. 471, 479 (4th Cir. 2004) (non-precedential opinion) (finding that once an arresting police officer ascertained that the plaintiff was the individual listed on the bench warrant, the officer had "probable cause (and indeed the duty) to serve the warrant and take [the plaintiff] into custody.").

There is also ample evidence in the record that the Philadelphia Police and the employees at the prison facility made efforts to confirm with the Burlington County Sheriff's Office that the warrant was valid.  Therefore, even if the Court were to determine that the bench warrant was not valid, Plaintiff cannot demonstrate that a reasonably well-trained officer would have, or even should have, known that the arrest was illegal despite there being a bench warrant. *See U.S. v. Leon*, 468 U.S. 897, 922 n. 23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (holding that physical evidence seized pursuant to a facially valid warrant is admissible, even though a reviewing court has subsequently determined that the warrant was defective.).

Moreover, Plaintiff's *Monell* claim that the City had a pattern and/or practice, policy or custom of failing to investigate arrestee's protestations that a warrant is invalid does not rise to a constitutional violation. *See Mann v. Township of Hamilton*, Civ. No. 90–3377, 1991 WL 87586, at *2 (D.N.J. May 20, 1991) (holding that an officer who executes a facially valid arrest warrant also does not have a "duty under the fourth amendment to investigate the validity of the warrant upon a protest by the arrestee that the warrant is invalid"); *see also Baker v. McCollan*, 443 U.S. 137, 145–46 (1979) (observing that an officer is not required to "investigate independently every claim of innocence"); *Anderson v. Goga*, No. 11-528, 2013 WL 3242445, at *3, (W.D. Pa. June 25, 2013) ("[P]olice do not have a constitutional duty to investigate a defendant's protestations of innocence"). Plaintiff's claims in this regard are belied by the record as there is significant evidence that the City made numerous contacts with the County to regarding the warrant.[4]  The record also reflects that the City operated pursuant to

---

[4] An NCIC search with Decedent's identifying information indicated that a limited extradition warrant was active

Philadelphia Police Department Directive 5.17, Wanted Persons which outlines the procedures for the apprehension of persons wanted in another state for a charge that is extraditable. *See* Supp. Cert., Ex. 15. Finally, Long, understandably frustrated with his circumstances, waived extradition, the unintended consequence of which gave credence to the reasonableness of his detention.

Given the absence of a constitutional violation and or a genuine issue of material fact related to Plaintiffs' policy and custom allegations, the City is entitled to summary judgment on Counts I, II and IV.

### 2. Gurbir S. Grewal, Attorney General's Office, State of New Jersey

Plaintiff's claims against the Attorney General and/or his office violate the Eleventh Amendment. "[T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies." *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). "Individual state employees sued in their official capacity are [ ] entitled to Eleventh Amendment immunity because 'official-capacity suits generally represent only another way of pleading an action' against the state." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249,

---

against Decedent (Pl.'s Counter-Statement Summ. J. ¶ 9, Doc. No. 88.; City's SUMF Summ. J. ¶ 10, Doc. No. 81-3). A Philadelphia Police officer contacted the Burlington County Sheriff, who confirmed that the bench warrant identified in the NCIC results was still active (Pl.'s Counter-Statement Summ. J. ¶ 10, Doc. No. 88.; City's SUMF Summ. J. ¶¶ 14-15, Doc. No. 81-3); Decedent was fingerprinted to confirm his identity as the suspect wanted in connection with the bench warrant and the results of that fingerprint comparison were positive (City's SUMF Summ. J. ¶ 17, Doc. No. 81-3); The Burlington County Sheriff's Office was notified of Decedent's arrest after he underwent this fingerprinting (*Id.* at ¶ 18); The assigned Philadelphia Police Department detective
prepared an arrest report, which listed the charge as "FUGITIVE FROM JUSTICE" and indicated that "THE OFFENDER WAS STOPPED FOR INVESTIGATION ON 11/5/18 AT 11:00 AM OFFICERS CONDUCTED A NCIC CHECK ON THE OFFENDER WHICH SHOWED AN ACTIVE WARRANT FROM NJ. THE OFFENDER WAS DETAINED. THE WARRANT WAS CONFIRMED VIA FINGERPRINTS" (*Id.* at ¶ 20); Burlington County confirmed again to Philadelphia Department of Prisons personnel that the warrant was active (*Id.* at ¶ 23); Decedent waived a challenge to extradition to New Jersey (*Id.* at ¶ 24); and Philadelphia Department of Prisons contacted the Burlington County's Sheriff Department to indicate that Decedent was ready to be extradited to New Jersey and was available for pickup. (*Id.* at ¶ 25.)

254 (3d Cir. 2010) (quoting *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d

301 (1991)). *See A.W. v. Jersey City Public Schs.*, 341 F.3d 234, 238 (3d Cir. 2003)

(holding that suits against state officials acting in their official capacity are really suits

against the employing government agency and are barred by the Eleventh Amendment).

Here, General Grewal and/or his office are immune from suit from Plaintiff's 42

U.S.C. § 1983 Claims, NJCRA claims, and the New Jersey Tort Claims Act claims, N.J.

Stat. Ann. § 59:1–1.

It is not clear from the pleadings or Plaintiff's opposition to the motions whether

she is suing General Grewal in his official or personal capacity, or whether the claims are

meant for the Attorney General's Office.  In his official capacity, General Grewal is not a

"person" under 42 U.S.C. § 1983 or the NJCRA. *Will v. Mich. Dep't of State Police*, 491

U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("neither a state nor its officials acting

in their official capacities are 'persons' under § 1983.").

With respect to Plaintiff's claims against the Office of the Attorney General,

Plaintiff's suit against this entity meets a similar fate because the Attorney General's

Office is a state entity immune from Plaintiff's NJCRA and 42 U.S.C. § 1983 claims. *Will*,

491 U.S. 66, 71; *see also Hockaday v. New Jersey Att'y Gen.'s Off.*, No. 16-0762 (KM),

2016 WL 6694483, at *1 (D.N.J. Nov. 14, 2016) (holding that the New Jersey Office of

the Attorney General is a "subunit[] of the State" entitled to sovereign immunity); N.J.

Stat. Ann. § 10:6-2(c). Finally, New Jersey has waived its immunity from tort liability

only in specified circumstances under the New Jersey Tort Claims Act, none of which

are applicable here.

Plaintiff's claim under the New Jersey Tort Claims Act also fails because a state judge's bench warrant needs to be rescinded by the judge who issued it. There is no evidence that the State, while prosecuting the case, had any knowledge or responsibility to rescind the warrant, so negligence does not attach and Count III should be dismissed against the New Jersey Attorney General and his office. For these reasons, summary judgment will be granted against the Attorney General and his office.

### 3. **The Burlington County Board of Chosen Freeholders, Sheriff's Office**

According to the amended complaint and Plaintiff's opposition brief, the claims against the County stem from:

> [T]he failure to rescind the bench warrant, the failure to apply the expungement order to the warrant, the custom of blind acceptance of all warrants as valid, the lack of procedures to investigate complaints by citizens that had previously answered to warrants, and the failure to train employees to remove warrants when a case was closed, when an accused was exonerated, when a criminal record was expunged, when an accused was not notified of a hearing, when an accused eventually did show up for the arraignment and attend his jury trial; when an employee learns that there is no Promis/Gavel record to investigate whether the case exists, has closed or been expunged. The woeful failure to have any training to correct invalid warrant in all of the foregoing instances rises to *Monell* constitutional deprivation under the 4th and 14th Amendments.

Pl. Opp. Br. at pp. 8-9.

The amended complaint does not specifically name *Monell* or its progeny. It does allege constitutional violations, albeit by grouping and considering all the defendants together, resulting from their policies, customs, and procedures. There is no allegation of failure to train in the amended complaint, but Plaintiff argues that is also a basis for the constitutional violations in her opposition brief. Because that claim does not appear

16

in the amended complaint, the Court will not consider Plaintiff's argument as to failure to train.

Plaintiff further claims that the County "routinely acquiesced in the unconstitutional conduct, approved it and sanctioned it. The only argument Defendant has offered is that it was the State's fault because the State prosecuted the case. This argument has no[][sic] merit." *Id*.

Burlington County moves for summary judgment on the basis that there are no genuine issues of material fact related to its limited involvement in Long's plight.  The County claims that the Sheriff's Office entered the warrant into NCIC after it had been entered into the record by the Judge and processed by personnel in the office of Criminal Case Management. These state employees were responsible for the predicate actions of entering the warrant into the system. Once the warrant was generated, the Sheriff's Office entered it into the NCIC. Because the Superior Court Judge never issued an order vacating the warrant the Sheriff could take no action.

The County claims its only hand in this matter was picking the Plaintiff up from Philadelphia County Jail after he had voluntarily waived extradition and agreed to return to New Jersey to answer the warrant.   In short, the County faults the judge for not rescinding the warrant and blames the State for its failure to request that rescindment warrant after the acquittal and failure to process the expungement.

To start, local governmental units such as the Burlington County Board of Chosen Freeholders are not liable under section 1983 solely on a theory of respondeat superior. *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 n. 8, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985); *Monell*, 436 U.S. at 690–91, 694, 98 S.Ct. 2018 (municipal liability attaches

only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003).

There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983. Relevant here, liability may attach to the County where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy[,]" *Bryan County*, 520 U.S. at 417, 117 S.Ct. 1382 (Souter, J., dissenting) and/or where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.' " *Id.* at 417–18, 117 S.Ct. 1382 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)); *see also Berg*, 219 F.3d at 276 (holding that plaintiff must "demonstrat[e] that the municipal action was taken with 'deliberate indifference' to its known or obvious consequences").

The Burlington County Board of Chosen Freeholders is a municipal entity subject to suit under 42 U.S.C. § 1983.[5] *See Ryan v. Burlington County, NJ*, 889 F.2d

---

[5] The Burlington County Board of Chosen Freeholders is a government entity and not a natural person. Therefore, it is not entitled to qualified immunity. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

1286, 1289 n. 1, 1290 (3d Cir. 1989).  Here, Plaintiff's allegations and the evidence in the record may demonstrate that the execution of a policy or custom adopted by the Burlington County Board of Chosen Freeholders inflicted the constitutional injury here.

The parties agree that the only person who can issue a bench warrant for failure to appear is a Superior Court Judge. Superior Court Judges are state employees, not county employees. Ditzel Dep., Ex. A, p.94: 4-7. When a bench warrant is issued, a member of the Criminal Case Management Office, an entity of the state, prepares the warrant. *Id*. p. 14:10-13; Ex. D p. 23: 6-7.  Once the warrant is prepared, the County Sheriff's Department enters the warrant into the NCIC system. *Id*. p14: 4-13; p.93: 19-25.  Only a judge can rescind a bench warrant.

Several persons connected to the warrant procedure process were deposed including Lieutenant Michael Ditzel ("Lt. Ditzel") of the Burlington County Sheriff's Office, who testified regarding the procedures in his office and specifically about the Sheriff's Office file on Plaintiff. Ditzel Dep., Ex. A. Karry A. Fow was a Clerk Typist in the Sheriff's Office during the relevant time-period and she manually entered warrants into the system. Fow Dep., Ex. C, pp. 6:8-7, 9-16.  Shannon DeNise is the Criminal Division Manager for the Burlington Vicinage of the Superior Court of New Jersey, a position she has held for fifteen (15) years. DeNise Dep., Ex. D, p. 7: 6-11. Ditzel and Fow are county employees, DeNise is a state employee.

Lt. Ditzel has overseen the Sheriff's Warrant Unit since 2012. Ditzel Dep, Ex. A., p 9:14-17. He explained that once a bench warrant is entered into the system, the Sheriff's Office must validate, or check that the warrant is still valid. Long's warrant was validated on August 2, 2016, and in September of 2018. Ex. A, pp.50:18- 51: 4. To

validate a warrant, personnel check their in-house system, then check the state's system, Promis/Gavel system, and finally check NCIC to ensure a warrant is still active. *Id.* at pp. 55:19- 52:2. According to Ditzel, only a judge can order a bench warrant be rescinded. *Id.* p. 98: 5-11, 43. DeNise testified that when a defendant is acquitted of charges at trial, there is no paperwork sent to the Sheriff's Office notifying them of the acquittal and/or an automatic request that all warrants be cleared. DeNise Dep., Ex. D. p. 30:8-16. If a judge orders a warrant be rescinded, a router slip from Criminal Case Management is generated and sent to the Sheriff's Office to process. Fow Dep., Ex. C., pp. 40:18-41:7, DeNise Dep. Ex. D., p. 22:3-21.

Long's warrant was validated on August 2, 2016, and in September of 2018. Ex. A, pp.50:18- 51: 4. In 2017, a validation check revealed that Long's warrant was not appearing in the Promis/Gavel system. Ditzel testified that a referral to the Burlington County Prosecutor's Office was made, however, they learned that Long's prosecution was handled by the State Attorney General's Office. *Id.* It appears that no further inquiry was made.  However, in November 2018, the warrant was again validated—three days after he was arrest on the bench warrant and was in custody in Philadelphia. *Id.* pp. 55:17-56:5.

Ditzel also explained the expungement process. He testified that the only time his office will react to an expungement order is if the defense attorney or person who handled the expungement sends the expungement order to them. *Id.*, p. 70:17-21. In other words, there is no electronic trigger to notify the Sheriff when an expungement order is issued.  It is up to the benefactor of the expungement order to notify and prompt an agency to transact the expungement. DeNise confirmed that an expungement

order is not self- actualizing and that she personally instructed defendants that it was the defendant's responsibility to distribute the expungement order to all entities that needed to get it. Ex. D., p. 35:1-15. Plaintiff does not argue that Long notified the Sheriff's Office and has no evidence of the same.

At the hearing in this matter, Plaintiff made a compelling argument likening her quest for liability/ accountability to a shell game.  The interplay between state and county employees in the case management of prosecutions in a New Jersey county court is confusing.  Even getting Long's criminal file has been a challenge: Plaintiff and the Defendant County have worked together to get Plaintiff access to Long's criminal file, but it seems that Plaintiff has only been able to achieve limited access and cannot append documents in support of her opposition to the present motions.  The best Plaintiff could do is submit a certification of counsel who saw the file but was denied permission to copy its contents.

The issue before the Court as to the County, however, is whether a genuine issue of material fact exists as to the policy in place regarding warrants.  In its brief, the County does not address *Monell* liability or its policy of the Sheriff's Office when it comes to validating warrants and whether there is a question of fact as to whether Long's plight was the result of negligence. It appears that Plaintiff's constitutional claims center on the "pro forma" process of validating warrants.

The record reflects that Lt. Ditzel followed a procedure when validating warrants. The procedure is cursory and only checks other indicators of the warrant's "activeness." For example, if the warrant remains in the NCIC and Promis/Gavel systems, the validation process stops.  In the circumstance where the warrant remains in one system,

but not the other, as happened here in 2017, Lt. Ditzel testified that he called the prosecutor.  This policy and procedure leave ample room for error when it comes to bench warrants.  If the judge is the only entity that can rescind a warrant and that chambers is never contacted, a mistake could happen without any double-checking procedure in place.

Moreover, another opportunity to validate the warrant presented itself when the Philadelphia Police telephoned the Sheriff's Office, prior to arresting Long on the bench warrant, to check whether the bench warrant remained active.[6]  Other than looking in the system, there is no evidence that the policy had safeguards against a mistake.  *Berg,* 219 F.3d at 277. Having established a municipal policy or custom, there is an issue of fact as to whether "through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." *Bryan County*, 520 U.S. at 404, 117 S.Ct. 1382.

On its face, the County's policy or custom does not violate federal law. Plaintiff, therefore, must establish that "that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice." *Id*. at 407, 117 S.Ct. 1382 (citations omitted); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Here, there is a genuine issue of fact related to the requisite indifference.  The

---

[6] Negligence by public officials, such as the employees of the Sheriff's Office, is not actionable as a due process violation and cannot be the basis for the claims against the County. *See Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Colburn v. Upper Darby Township*, 946 F.2d 1017 (3d Cir. 1991). Liability here is established by virtue of the validation policy and process and that the policy caused the Long's constitutional violation. *Bryan County*, 520 U.S. at 404, 117 S .Ct. 1382.  The County's brief argues only that there are no genuine issues of fact because of its limited involvement in Long's arrest.  However, the brief is largely silent as to the validation process' connectedness to the events that lead to Long's arrest and constitutional violation. There are disputed factual issues relevant to this determination.

warrant had been validated by the Sheriff's Office in 2017, even though the warrant did not appear in the Promis/Gavel system.  The validation process appears to be self-fulfilling, with no safeguards in place. The lack of protective measures and fail safes against a mistake seems comparable to "a failure to equip law enforcement officers with specific tools to handle recurring situations." *Bryan County*, 520 U.S. at 409, 117 S.Ct. 1382. "When a mistake can so obviously lead to a constitutional violation, we cannot hold that the municipality was not deliberately indifferent to the risk as a matter of law." *Berg,* 219 F.3d at 277.  As a result, summary judgment as to Plaintiff's constitutional claims is denied.

Under New Jersey law, tort liability against public entities and employees is governed by the New Jersey Tort Claims Act. N.J. Stat. Ann. § 59:1–1. Summary judgment is denied for the same reasons underscoring the deliberate indifference element of Plaintiff's *Monell* claim.

An appropriate Order shall issue.


Dated: June 29, 2023

s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez, USDJ